### Rose Ellen Haley, Appellee, v. Supreme Court of Honor, Appellant.

#### Gen. No. 4,951.

1. PLEADING—*when duplicity established.* Held, that the pleas interposed in this cause to an action upon a benefit certificate were subject to the charge of duplicity.

2. PLEADING—*when inartificial in praying judgment in bar of action.* A plea which professes to answer the whole declaration and

Haley v. Supreme Court of Honor.

prays judgment in bar of the action is irregular where it contains no answer to the common counts.

3. FRATERNAL BENEFIT SOCIETIES—*what does not avoid certificate.* A certificate will not be avoided by reason of a statement made by the applicant to a general question that he was not a "plow polisher," when in answer to another question he made the statement that he was a laborer, and the society did not specifically seek to ascertain what kind of labor he performed.

4. FRATERNAL BENEFIT SOCIETIES—*when by-laws not retroactive.* *Held*, that the particular by-laws in question in this case adopted after the admission of the member, were not intended to be retroactive in their operation.

5. FRATERNAL BENEFIT SOCIETIES—*when by-laws not given retroactive operation.* The by-laws of a fraternal benefit society are not given a retroactive operation unless the intention that they shall so operate clearly appears.

6. INTEREST—*when need not be claimed in declaration.* Interest need not be made the basis of a claim in a declaration where the allowance of such interest is authorized by statute.

Assumpsit. Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed March 11, 1908.

Statement by the Court. In this action brought by Rose Ellen Haley against the Supreme Court of Honor, the declaration charged that the defendant was a fraternal beneficiary society organized under the laws of Illinois for the purpose of furnishing life indemnity for pecuniary benefits to the beneficiaries of deceased members, and that on December 19, 1899, defendant issued to Joseph L. Haley, plaintiff's husband, a certificate of membership set out in said declaration, which provided among other things that, in case of his death while a member in good standing, $2,000 should be paid to his wife, Rose Ellen Haley; that Joseph L. Haley died May 10, 1905, while said certificate of membership was in full force and effect; that from the issuance of said certificate to the date of his death said Joseph L. Haley continued a member of said order in good standing and paid all fees, dues and assessments required by his certificate and the constitution, rules and by-laws of the order, and kept all legal conditions and requirements of the order;

that after his death, plaintiff furnished to defendant proofs of death, as required by the rules of the order; that defendant, by the constitution, by-laws and rules and said certificate, undertook and agreed to pay plaintiff as his beneficiary in said certificate the sum of $2,000, and promised so to do, but, though often requested, failed and refused to make such payment. To this declaration the common counts were afterwards added. Defendant filed seven pleas, the first the general issue, and the others special pleas. A general and special demurrer to the special pleas was sustained. Defendant withdrew the general issue and elected to abide by the special pleas. Defendant was defaulted for want of a plea. Thereafter a jury was waived, though this was unnecessary, and the court heard the evidence and found for plaintiff and assessed her damages at $2,158. A motion in arrest of judgment was denied, plaintiff had judgment on the finding and defendant appeals.

The second plea averred that the benefit certificate stated that said Joseph L. Haley (hereinafter called the insured) had been accepted as a member of the order on the faith of the warranties, statements and representations shown in his application for membership and that said certificate was issued upon condition that the insured shall comply with the constitution, laws, rules and regulations of the order and with the constitution and by-laws of the district courts in force or that may be in force hereafter, and that the statements made in the application are true and that, if said application shall be found in any respect untrue, said certificate shall be null and void and of no effect and all moneys which have been paid and all rights which have accrued under said contract shall be forfeited. The plea further averred that the insured executed an application for said certificate, which contained, among other things, the following statements, provisions and agreements, and set out among other things that the insured declared, answered and warranted that he was not now engaged in any of a large number of occupations named, among which was plow polisher, "or other like hazardous occupations," and that the insured

Haley v. Supreme Court of Honor.

agreed that he would not hereafter, while a member of the order, engage in any of said occupations, "except at the same time recognizing the full force of the order's law limiting or extinguishing its liability upon the certificate of any member engaging in such occupation"; that the insured agreed to conform in all respects to the constitution, laws and usages of the order, now in force or which may hereafter be adopted by the Supreme Court thereof, and that any untrue or fraudulent statement to the medical examiner or any concealment of facts intentional or otherwise in such application, should forfeit the rights of the insured and his beneficiaries to any and all benefits arising therefrom. The plea averred that the insured stated in his application that his occupation was a laborer; and that he fully understood the laws of the order and the restriction in its membership, and that part of the laws defining the restrictions upon its membership and which provided for the forfeiture of the indemnity for untrue statements, and understood that the laws of the order now in force or hereafter enacted became a part of the contract of indemnity, and understood and agreed that the order would not indemnify against death resulting from occupations prohibited by its laws. The plea further stated that at the time said application was made and said certificate was issued and from thence to July 1, 1900, said constitution and laws contained certain provisions set out in the plea. Among these were that persons to become members of the order must not be "engaged in any of the prohibited occupations hereinafter mentioned or any other hazardous or extra hazardous occupations." Section two of said laws was headed "Occupations excluded" and stated that the persons engaged in the following occupations would not be admitted to membership, and then named various occupations (not, however, including "plow polisher," "plow grinder," "brass finisher," "file finisher and grinder;" or "grinder in cutlery works"), "or other like hazardous occupations." Said section two then provided that if, after having become a member of the order, he shall engage in any of the above named or like hazardous occupations, his certificate shall become for-

31

feited and void, unless before entering upon any of the fore-going occupations, he files with the supreme recorder a written waiver of liability of this order upon his benefit certificate founded upon his death or permanent disability, either as the result of accident occurring in, or of disease directly traceable to, his employment in such prohibited occupation, the acceptance of such waiver to be subject to the approval of the board of directors. The plea averred that said section also provided that if he entered upon a prohibited occupation before filing such waiver, he might file such waiver at any time during the continuance in said employment, if accompanied by a certificate of sound bodily health. The plea then alleged that afterwards a certain other constitution and other laws were adopted by the supreme court of the order, which went into force July 1, 1900, and continued in force till July 1, 1903. They contained a section 63, entitled "Occupations prohibited," which had similar provisions to those above described in section 2, except that it enlarged the list of prohibited occupations. It ended with the words "or other like hazardous occupations." Said section, however, did not include "plow polisher," "plow grinder," "brass finisher," "file finisher and grinder," or "grinder in cutlery works." Said plea further averred that afterwards certain other constitution, laws and provisions were enacted by the supreme court of the order, which went into effect December 7, 1904, and continued in force till the death of the insured; that in section 107 of said new constitution and laws, entitled "prohibited occupations," were a large number of employments prohibited, including "file finishers and grinders," "grinders in cutlery works," and "plow finishers and grinders," concerning which prohibited occupations there were similar provisions for waiver. The plea then averred that when said application and said certificate was issued the insured was not a laborer as stated and warranted by him, but was a plow polisher, which it was averred the insured knew was a different occupation from that of laborer; that insured thereafter during sub-

Haley v. Supreme Court of Honor.

stantially the entire time between the date of said certificate and his death, and for four years just prior to his death, was engaged in the business of plow polisher, in violation of said policy and the statements, warranties and agreements of his application and the constitution, laws, by-laws and regulations of the order, and that he did not at any time file with the supreme recorder a written waiver of the liability of the order upon his certificate, and that by reason thereof this certificate was null and void, and the supposed rights of the plaintiff did not accrue to plaintiff, but were forfeited, and that plaintiff has no right of action.

The abstract does not set out the remaining special pleas, except to say that in the third plea there was an averment that the insured was a "plow grinder" instead of a "plow polisher"; in the fourth plea that he was a "plow grinder," and that that was an occupation of great hazard and of much greater hazard to health and life than that of laborer, and similar in hazard and danger to that of "plow polisher," "brass finisher," "file finisher and grinder," "grinders in cutlery works," and other occupations prohibited by the certificate, application and laws of the order; in the fifth plea that the insured was a "plow grinder," an occupation different from that of laborer within the meaning of the constitution and laws of the order; in the sixth plea that these terms are within the meaning of the policy and application, and that the insured contracted disease and died from the effects of such prohibited employment; and that in the seventh plea the same averments are contained as in the sixth, except that the occupation of the insured is stated to be that of "plow polisher."

The demurrer was general and special. Among the special causes of demurrer assigned were that these pleas are double, setting out the supposed duplicity; that they are repugnant to each other, setting out the supposed repugnancy; that they do not allege that the statement of insured in his application that he was a laborer was fraudulently or falsely made; that they do not aver that the insured had any notice

of any change in the constitution and laws of the order; that the statement in the application that the insured was not engaged in the occupation of "plow polisher" was mere surplusage of representation, as that occupation was not then prohibited by the constitution or laws of the order, and that said application further contained the words in the same paragraph wherein it was stated that the applicant was not engaged in any of certain occupations, including plow polisher, as follows: "I will not hereafter while a member of this order engage in any of these occupations except at the same time recognizing the full force of the order's law limiting or extinguishing its liability upon the certificate of any member engaging in such occupation"; that there was no allegation that the constitution and laws of July 1, 1900, or of December 7, 1904, were legally adopted by the order or by its supreme court in conformity with the laws of the order; that the certificate does not allege that the insured agreed to be bound by any change in the constitution and laws enacted after the date of his application; and that said pleas are otherwise informal and insufficient.

It is argued that the court erred in sustaining the demurrer to these pleas, and also in awarding interest on the face of the policy.

William B. Risse and Searle & Marshall, for appellant.

Ludolph & Reynolds and S. R. Kenworthy, for appellee.

Mr. Justice Dibell delivered the opinion of the court.

We are disposed to hold these pleas bad for duplicity. Each special plea seems to set up the following defenses: First, that the statement in the application that the insured was a laborer, when in fact he was a plow polisher, was a warranty and was a falsehood, and that because thereof the certificate never was valid; second, that the continuation of the insured in the employment of plow polisher after the

issue of the certificate was a breach of the contract and invalidated the policy; and third, that the constitution and laws which went into force December 7, 1904, forbid plow polishers to be members and that as the insured had agreed to be bound by the laws subsequently enacted, he was bound by said enactment of December 7, 1904, and that, by continuing in the occupation of plow polisher after that date without filing a waiver as said new laws required, he broke his contract and the certificate then became void.

But we prefer to place our decision chiefly on other grounds. The statement by the insured that he was a laborer was true, for a plow polisher is also a laborer. The laws of the order in force when this certificate was issued, did not prohibit plow polishers from being members. This was not then a prohibited occupation. The occupations then prohibited by the laws of the order did not include any employment resembling that of plow polisher. The statement in the application that the applicant was not a plow polisher was not in the form of a question calling for a categorical answer or for any answer. The term "plow polisher" was included among a large number of other specified occupations, and the applicant's only assent to the statement that he was not engaged in said occupations was by his signature at the end of the application. There is no averment that he wrote the words "plow polisher" or that his attention was called to these words further than is evidenced by the fact that he signed the application wherein that statement is contained. If the order desired to know more fully what kind of labor he did, it could have asked him to specify more fully at what kind of labor he was employed. This it did not do. It is not reasonable to suppose that the insured, while engaged in the occupation of plow polisher, took this certificate and thereafter paid dues and assessments thereunder for the rest of his life, with a knowledge that he had stated in his application that he was not a plow polisher, and that by reason of the contents of the application he had signed, the certificate was void from its issue, and that he forfeited to the order all dues and assessments paid thereon,

and that said certificate and such payments would not in any way benefit either himself or his wife. We think this case is within the reasoning of Minnesota Mutual Life Ins. Co. v. Link, 230 Ill., 273, and that the statement in question was a mere representation.

This certificate was issued December 19, 1899. As already stated the laws of the order did not then prohibit plow polishers from becoming members. The averments of the declaration that the insured paid all dues and assessments from the issuing of the certificate to the date of his death are not controverted, and indeed the proofs at the hearing, not abstracted, show that the supreme recorder of the order stated to appellee's attorney that the proofs of death were in proper form and properly filed, and that the insured was in good standing at the time of his death, and that the only ground for refusing payment of the certificate was that the insured had been in a prohibited occupation. Plow polishers were first placed in the prohibited list on December 7, 1904. The insured agreed to be bound by the laws of the order enacted after the issue of his certificate. If therefore it had afterwards passed a law providing that persons already members who should thereafter be engaged in certain occupations should forfeit their certificates, that would have bound the insured, if it was a valid law, of which we have grave doubts. But the new laws of this order, which went into force on December 7, 1904, so far as they are set up in the second plea, are not retroactive in their language. Section 106, entitled "Who may be admitted," reads "Persons to become benefit members of this society must be * * * not engaged in any of the prohibited occupations hereinafter mentioned, or in any other hazardous occupation." Section 107 of said new laws, entitled "Prohibited occupations," reads, "Persons engaged in the following occupations, or who shall engage therein occasionally for hire or otherwise, shall not be admitted to benefit membership in this society," and this is followed by an enumeration of occupations which includes many not theretofore prohibited, and among them "plow polishers." The words "shall not

be admitted" are wholly prospective. Their natural meaning applies to the future only. There is no language in the new laws set out in the plea which would naturally apply to those who were already members of the order and who were engaged in occupations then for the first time prohibited. It is reasonable to suppose that if the order had intended that the prohibition of certain additional occupations should apply to those already members of the order, some words would have been used which would plainly give it a retrospective operation, and that some reasonable time would have been given old members engaged in occupations then newly prohibited in which to change their employments. No language of that kind is found in the new laws as pleaded. The general principle governing the construction of such laws of a beneficiary society is that they are prospective only in their operation, and relate only to contracts thereafter made, unless the intention to give the law retrospective operation and to apply it to existing certificates and contracts clearly appears, and that intention we assume must clearly appear from the new laws themselves. This rule of construction is laid down in Kaemmerer v. Kaemmerer, 231. Ill., 154; Moore v. Guaranty Fund Life Society, 178 Ill., 202; Voigt v. Kersten, 164 Ill., 314; and Benton v. Brotherhood of Railroad Brakemen, 146 Ill., 570. Under this rule of construction, the new law prohibiting the occupation of "plow polisher" was not intended to and did not apply to this prior beneficiary certificate and did not invalidate it. The plea therefore does not state a defense to the action.

The second plea is bad for another reason. It professes to answer the whole declaration and prays judgment in bar of the action, yet it contains no answer to the common counts, which were filed long before the pleas were filed, nor does it allege that plaintiff's sole and only cause of action is upon the beneficiary certificate set forth in the first count of the declaration.

The other special pleas were equally defective. The demurrer was properly sustained.

It is urged that interest could not be recovered because

the special count of the declaration did not declare for interest. Where interest is claimed by virtue of an express contract to pay for interest, no doubt the declaration should count upon the agreement to pay interest, but where interest is payable by virtue of the statute, and not by virtue of the contract we think it is not necessary to specify the interest in the declaration. Grand Lodge A. O. U. W. v. Bagley, 164 Ill., 340. Section 2 of the statute relating to interest allows interest at 5 per cent per annum for all moneys after they become due on any instrument in writing. This certificate was an instrument in writing, and the money was due before this suit was begun. The suit was started on September 5, 1905. Through an excess of caution, appellee only asked for and computed interest on the principal at 5 per cent per annum from October 1, 1905, a date later than the date of the commencement of this suit. Appellant's brief states that the *ad damnum* in the declaration was $2,000, and its abstract of the declaration makes it so appear, but an inspection of the record shows that both the *præcipe* for summons, and the *ad damnum* in the declaration, laid the damages at $4,000.

The judgment is affirmed.

*Affirmed.*