## Anna Waerness, Appellee, v. The Independent Order of Foresters, Appellant.

### Gen. No. 31,423.

1. FRATERNAL BENEFICIARY ASSOCIATIONS—*when excess payment upon premium deemed advance payment upon next premium.* Where the holder of a fraternal benefit policy, in anticipation of the issuance of a substitute policy for a larger amount which was thereafter issued, paid a premium larger than the first policy called for, the surplus payment so made constituted an advance payment upon the next premium.

2. FRATERNAL BENEFICIARY ASSOCIATIONS—*advance payment of premium as accelerating effective date of policy.* The fact that the holder of a fraternal benefit association policy, in anticipation of the issuance of a substitute policy for a larger amount which was thereafter issued, paid a premium larger than the first policy called for did not render the second policy effective as of the date of such payment, the minds of the parties not having met.

3. FRATERNAL BENEFICIARY ASSOCIATIONS—*judicial policy as to declaration of forfeiture of insurance policy.* The courts will never cheerfully hold that an insurance policy has been forfeited and will strictly construe the record as against a claimed forfeiture in beneficiary's action upon the policy of a fraternal society.

4. FRATERNAL BENEFICIARY ASSOCIATIONS—*when waiver of default in payment of premiums binding notwithstanding by-laws to the contrary.* If the local body or officer of a fraternal mutual benefit insurance society has apparent authority to do an act, such as waive default in payment of premiums, that waiver will bind the society, in spite of by-laws to the contrary, in an action by the beneficiary upon the policy.

5. FRATERNAL BENEFICIARY ASSOCIATIONS—*letter of official demanding payment of overdue premium as waiver of default for nonpayment.* The letter of the local financial secretary of a fraternal insurance so-

ciety demanding payment of an overdue premium amounts to a waiver of any right the society might have under its by-laws to refuse payment for default on premiums under the policy in the beneficiary's action thereon.

6. INTEREST—*necessity of special count demanding, in action on insurance policy of fraternal society.* Under Cahill's St. ch. 74, ¶ 2, allowing interest on any debt evidenced by writing, no special count for interest is necessary in a declaration demanding payment on an insurance policy issued by a fraternal society, in order to secure 5 per cent interest on the amount of the policy.

Appeal by defendant from the Circuit Court of Cook county; the Hon. J. C. EAGLETON, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1926. Affirmed. Opinion filed May 2, 1927.

CHARLES F. VOGEL, for appellant.

BROWN, FOX & BLUMBERG, for appellee; NATHAN S. BLUMBERG and KARL EDWIN SEYFARTH, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

The defendant is a fraternal insurance order organized under the laws of the Dominion of Canada. Plaintiff sued in assumpsit as beneficiary of a life insurance policy issued by it to her deceased husband, Henry T. Waerness.

There was a plea of the general issue and a stipulation that defendant might, without filing a special plea, offer evidence tending to show that at the time of death deceased was not a member in good standing of the defendant order.

At the close of all the evidence each party moved for an instruction which was denied, the jury returned a verdict for the plaintiff assessing her damages at $6,305, and on this verdict the court, overruling motions for a new trial and in arrest, entered judgment.

The material facts are not contradicted and appear to be substantially as follows:

On February 26, 1920, Henry T. Waerness made application for admission to membership in the defendant corporation and applied at that time for a mortuary benefit of $3,000. By a letter dated March 1 thereafter, defendant notified the applicant that he had been accepted by the Supreme Court Medical Board, and on March 22 an insurance policy with mortuary benefits to the amount of $3,000 was issued to him.

The applicant was at that time 51 years of age, and the monthly premium for a $3,000 policy was $10.89. There were also court dues of forty cents a month. The pass book in evidence indicates that Waerness was admitted to membership on March 9, 1920.

On May 1, 1920, Henry T. Waerness made application for $2,000 additional mortuary benefits. Previous thereto, on March 24, 1920, the physician who had first examined him on behalf of the lodge reported that the insured had presented himself for additional insurance and examination and recommended him therefor.

On July 7, 1920, the policy upon which this suit is brought was issued to the applicant in the sum of $5,000, and the policy previously issued for $3,000 was canceled.

The monthly premium of this policy for $5,000 was $18.15. On March 11, 1920, Mr. Waerness paid the premium for the months of April, May and June, at that rate. On July 6 thereafter he paid at the same rate the premium for the months of July, August and September. At these respective times he also paid court dues at the rate of forty cents per month.

Payment for the first three months was made on March 11 to the financial secretary, who at that time changed the pass book of the applicant so as to indicate that Waerness was paying on a $5,000 policy.

Under the rules of the Order, the actual dues and assessments would not begin until the first of the month following the actual payment thereof.

The payments for these six months of the amounts above named were made by check through Dr. Schaubel, the high chief ranger and the chief ranger of Court Humboldt, to which the insured belonged. The entire amount was forwarded by Frank Roth, the financial secretary of Court Humboldt, to the home office at Toronto, Canada. If the insurance policy for $5,000 was in force only from the date upon which it was issued, there was an overpayment of $21.78.

Further payments were not made by Mr. Waerness, but the monthly premiums for October and November were paid to the home office by the local court out of its general fund, which it seems was customarily used for that purpose. The report of the local court indicates that the insured was suspended on December 1, 1920, for nonpayment of dues and assessments for that month.

There was evidence tending to show that notices for October and November were in due course mailed to the insured, stating that if the assessments and dues for those months were not paid he would be suspended.

The by-laws of the Order provide that, where the dues and assessments are not paid on or before the last day of the month prior to the month for which his assessment must be paid, a member *ipso facto* stands suspended for such failure. The local court ordinarily made payment to the supreme court of the Order on the 10th day of each month.

On December 5, 1920, at 9:30 a. m. at St. Elizabeth's hospital, Chicago, Illinois, Henry T. Waerness died as a result of shock and injuries incurred at about four o'clock on the same morning when he fell, in some manner not ascertained, from the rear porch of his apartment to the ground below.

On December 5 the financial secretary of Court Humboldt mailed to the insured the following letter:

> "Office of Financial Secretary
> Court Humboldt 3389, I. O. F.
> Chicago, Illinois.

"Dear Sir and Brother:

"At a recent meeting of our Court a motion was passed that all members who are indebted to the Court be notified to pay up within 30 days or be suspended. Your account shows you owe the Court for October, November and December, three months, $18.15 and 40, $18.55, $55.65. Our next meeting will be held December 11, election day, therefore, kindly give this matter your immediate attention.

> Fraternally in L. B. & C.
> (Signed) Frank Roth, Fin. Sec'y."

This letter was in due course received by the plaintiff. Without other information, so far as the evidence discloses, on December 8, thereafter, she mailed her check for the sum of $55.65, drawn to the order of the defendant, to Frank Roth, financial secretary. On December 9 this check was returned to her with a letter which stated:

"I received your letter today, also check, but I am sorry to have to return the check for $55.65 because your husband is suspended from the Independent Order of Foresters."

Defendant furnished to the plaintiff blanks for proofs of death with written statement, however, that in sending same defendant did not admit any liability. Such proofs were submitted by plaintiff on January 2, 1921, and on February 11 thereafter payment was refused.

The constitution and by-laws, which by agreement became conditions in the policy, provided that no branch of the Order nor any officer or member of it shall have any power to waive any provisions of the constitution and laws of the Order; that each court

and each member are the agents of the members; that payments made to the financial secretary shall be received by him as agent of the member making the payment; that neither he nor other officers of a court are officers of the corporation, and that members suspended may not be reinstated except according to the provisions of the laws of the Order nor unless they are in sound health.

Two questions arise under the evidence and are urged in the briefs: First, was the insured in default at the time of his death in the payment of his dues and assessments? Second, assuming that he was in default and suspended for that cause, were such default and suspension waived by any one having authority so to do?

If we assume that the policy for $5,000 upon which the plaintiff sues did not go into effect until the date upon which it was issued, namely, July 7, 1920, and that the insured was only protected by a $3,000 policy up to that date, then it is apparent that there was an overpayment of $21.78, a sum more than sufficient to meet the payment for December. The defendant contends, as it necessarily must, that the $5,000 policy was in force from the date on which the premium for that amount was paid. There could, however, be no contract of insurance until the minds of the parties had met upon its terms. The contract is in writing, and the application and laws of the Order and the policy constitute the contract. It can hardly be successfully contended that, if the insured had died prior to the time the policy for $5,000 was issued to him, the beneficiary could have recovered under that policy.

Moreover, it must be remembered that the question here is whether an insurance policy has been forfeited, and the courts are always reluctant to hold that such forfeiture has taken place. The record must therefore be strictly construed against the defendant, and upon such construction we are disposed to hold that the insured was entitled to a credit of $21.78 on account of

premiums, and that his policy was therefore not subject to forfeiture. As was said in *Knights Templars & Masons Life Indemnity Co. v. Vail,* 206 Ill. 404:

"The law does not favor forfeitures and never enforces them cheerfully, and will decline to enforce them when they are against equity and good conscience, and that it is not conscionable for a company to forfeit a policy when it has in its treasury more than enough of the assured's money to pay the assessment. And in *Elliot v. Grand Lodge,* 2 Kan. App. 430, it was held that where money sufficient to pay an assessment is in the treasury of the subordinate lodge, even though the latter may have made an appropriation of the fund which would show the assured in arrears, no forfeiture can be declared. See also Niblack on Benefit Societies, sec. 271."

The conclusion at which we have arrived on the first question will make unnecessary any extended discussion of the second further than to say that the facts, as above recited, indicate an intention on the part of the defendant to waive the suspension.

The defendant earnestly contends that the local court, and in particular the financial secretary, under the by-laws was wholly without authority to waive any requirement of the by-laws relating to reinstatement, and *Dillon v. National Council Knights & Ladies of Security,* 244 Ill. 202, is cited to that point. In that case, however, the Appellate Court had found as a fact that the alleged agent was without authority to waive the conditions in question, and the Supreme Court stated that it was bound by that finding of the Appellate Court. The general rule, however, in this and other States, seems to be that the by-laws of a mutual benefit society, limiting the authority of its local organizations or officers in these respects, are unavailing where such local body or officer has apparent authority. *Independent Order of Foresters v. Schweitzer,* 171 Ill. 325; *Dougherty v. Independent Order of Foresters,* 125 Minn. 142; *Independent Order*

218    APPELLATE COURTS OF ILLINOIS.

Poncher ·v. Mohawk Auto Equip. Co., 244 Ill. App. 218.

*of Foresters v. Cunningham,* 127 Tenn. 421; *Zeman v. North American Union,* 263 Ill. 304; *Dromgold v. Royal Neighbors of America,* 261 Ill. 60, are a few of the many cases cited in the briefs on this point.

Assuming the authority of Roth, his letter demanding payment of the December premium after the date upon which forfeiture was claimed, must, irrespective of the other evidence, be held to amount to a waiver of the right to forfeit. (*Chicago Life Ins. Co. v. Warner,* 80 Ill. 410; *Grand Lodge A. O. U. W. v. Lachmann,* 199 Ill. 140; *Illinois Life Ass'n v. Wells,* 200 Ill. 445; *Adam v. Columbian Nat. Life Ins. Co.,* 218 Ill. App. 54.)

It is urged that the court erred in instructing the jury that interest at 5 per cent might be included in assessing plaintiff's damages, for the reason that no special claim for interest was made in the declaration. As the interest allowed was due by virtue of the statute, it was unnecessary that the declaration should state that special claim. (*Haley v. Supreme Court of Honor,* 139 Ill. App. 478.)

It is argued that certain of the instructions were erroneous; but, as in our opinon the plaintiff was entitled to an instruction in her favor, if there was such error, it was harmless.

The judgment is affirmed.

*Affirmed.*

McSURELY, P. J., and JOHNSTON, J., concur.